GEORGE W. HARRIS *v.* HAZLEHURST OIL MILL & FERTILIZER COMPANY.

1. CAUSE OF ACTION. *Equitable assignment.    Attorney and client.    Contract.*

Attorneys in a suit for unliquidated damages, brought on an agreement with the plaintiff operating to transfer to them a share of the sum to be recovered, have an equitable assignment of the recovery to the extent of such share.

2. SAME. *Judgments.    Set-off in equity.*

Where, under such an agreement with his attorneys, a plaintiff recovers judgment against the defendant, and the latter seeks in equity to satisfy it by crediting its amount upon another judgment which he had obtained against the plaintiff, he cannot so satisfy that part of the plaintiff's judgment which equitably belongs to the attorneys.

FROM the chancery court of Copiah county.

HON. HENRY C. CONN, Chancellor.

The Hazlehurst Oil Mill & Fertilizer Company, the appellee, was the complainant in the court below, and Harris, the appellant, was defendant there.    The complainant had a judgment against defendant, and defendant had a judgment against complainant.    The latter was the smaller of the two.    The object of the bill was to have defendant's judgment satisfied by a credit on the one belonging to complainant, it being shown that the defendant was insolvent, etc.    The case was tried upon an agreed statement of facts, which was as follows:

"*Agreed Facts.*—On the twenty-third day of March, 1899,

the Hazlehurst Oil Mill & Fertilizer Company filed a declaration against G. W. Harris on an open account for the sum of $436.13.    Then, on the twenty-seventh day of March, 1899, Harris filed a declaration against the oil mill, etc., company for an alleged breach of contract that he claimed to have had with it to furnish him hulls and meal for his live stock during the season of 1898 and 1899, embracing the fall of 1898 and the beginning of the year 1899, claiming $5,792.40 as damage sustained by him for the alleged breach of said contract that he had with the oil mill, etc., company.    On the fourteenth day of December, 1899, Harris failing to plead to the declaration filed against him by the oil mill, etc., company, a judgment by default was taken by the oil mill, etc., company for the amount they had sued for $436.13, with interest and the costs of suit.

The oil mill, etc., company appeared and pleaded to the declaration filed against it by Harris, and among other pleas filed in the case by the oil mill, etc., company, the first plea is to the effect that the said defendant, by its attorneys, says that it never entered into any such contract as plaintiff, by his declaration, hath alleged it entered into with him, and of this it puts itself upon the country.    Issue was joined on this and other pleas in the case, the case argued and submitted to a jury, who retired and found a verdict for the plaintiff, Harris, in the sum of $200.    This verdict was returned and judgment entered on the eighteenth day of December, four days after the judgment obtained by the oil mill, etc., company against Harris.

There was but one course of dealing between the oil mill, etc., company and Harris and the open account sued on by the oil mill, etc., company, and the breach of the contract sued on by Harris grew out of one and the same transaction, Harris having bought hulls and meal of the said oil mill, etc., company to the amount of $436.13 under the said contract claimed by him to have been made by him with the said oil mill, etc., company.

Before the institution of the suit by Harris, on the twenty-

third day of March, 1899, he contracted verbally with his attorneys, Williams & Mayes, to conduct the suit for him, agreeing to give them forty per centum of the amount they should recover in the suit against the oil mill, etc., company, for the breach of the alleged contract, and it is agreed that Harris is insolvent and was insolvent at the time that he made the contract with Williams & Mayes, and that this was the only way he had to pay them. Williams & Mayes knew at the time that they brought the suit for Harris that the oil mill, etc., company was claiming, on open account against Harris, the amount that they subsequently sued for and reduced to judgment on December 14, 1899.

At the time of filing the original bill in this cause, the oil mill, etc., company had no notice that the attorneys, Williams & Mayes, were asserting any claim to the judgment, either a legal or an equitable claim, but that at the time of the filing of the amended bill the oil mill, etc., company knew that the entry made on the judgment rolls in the clerk's office in the circuit court had been made, and they admit that they had been served with the notice attached to Harris' answer, and that it had been served on the day and date whereon it purports to have been made.

It is agreed that the copies of the notices given and attached hereto as exhibits were given on the dates named in the notices, and that they contained just what is set out in the exhibits."

EXHIBIT TO AGREED FACTS.

"*To I. N. Ellis, president of the Hazlehurst Oil Mill & Fertilizer Company, and R. N. Miller, attorney of record for same:*

We hereby notify you that, under a contract made with George W. Harris, plaintiff in the case of George W. Harris *v.* Hazlehurst Oil Mill & Fertilizer Company, the said contract having been made before the institution of said suit, we were to receive forty per cent. of any amount recovered by judg-

ment in said case. We were authorized by Mr. Harris to credit the judgment he holds in his name against you for the sum of $120, the amount of his interest in the said judgment, and this credit we have made on the execution now in the hands of the sheriff. We demand payment now of our interest in same, amounting to $80, and, unless same is paid, we have instructed the sheriff to make same by levy.          WILLIAM WILLIAMS.

ROBT. B. MAYES.

Hazlehurst, Mississippi, April 25, 1900.

Accept notice.          SEXTON & MILLER,

*Att'ys for Oil Mill.*"

ENTRY ON JUDGMENT ROLL—PART OF AGREED FACTS.

"We acknowledge release and satisfaction of $120, Harris interest in judgment, which is satisfied by applying the above amount as a credit on judgment obtained by Oil Mill *v.* Harris, and order execution as to the remainder, $80.

WILLIAM WILLIAMS,

R. B. MAYES,

April 25, 1900.          *Att'ys Plaintiff.*"

*Robert B. Mayes*, for appellant.[*]

The facts in this case are so brief, and are also agreed to by the attorneys representing the parties, that I deem any comment on them here entirely unnecessary. So I shall content myself with citing the court's attention to the authorities on which I rely for a reversal of the decision of the chancellor in the court below in making the injunction herein granted perpetual.

1. That any chose in action is assignable in this state is settled in the affirmative beyond all question. Code 1892, § 660; 59 Miss., 280.

2. This assignment need not be in writing, unless the party to whom it is assigned desires to maintain an action in his own name. Code 1892, § 660.

[*] The brief is reported in full by order of the court.

3. An assignment of a cause of action may be either a legal assignment or it may be an equitable assignment. In case of a legal assignment, as a matter of course, all the formalities of transfer have to be complied with. But, where it is an equitable assignment, it does not obtain its validity from the observance of the legal formalities, but from the intention of the parties; any order, writing or act, or any oral or written declaration evidencing an intention to make an assignment, is just as effectual as the most formal instrument. The leading authorities on this subject are to be found in 7 George, 143; 3 Pomeroy's Eq. Jur., secs. 1282, 1271, and 89 N. Y., 518. Also the following authorities are cited: Bisphman's Eq., sec. 167; 141 Mo., 113; 2 Story's Eq. Jur., p. 376.

4. The agreement by Harris to give his attorneys "forty per cent. of the amount that they should recover in judgment," vested in the attorneys, then and there, a valid equitable interest in the judgment. This agreement made by Harris with his attorneys must not be confounded with the cases where the agreement was to " pay out of the verdict " a certain amount. In those cases it is held that such an agreement does not constitute an " equitable assignment," for the reason that it is a mere personal responsibility on the part of the person making the agreement, coupled with an executory agreement to pay "out of the proceeds." But the facts in the case at bar do not show that any such agreement was entered into between Harris and his attorneys, or that it was so understood. The agreement shows conclusively that it was Harris'· intention to convey a present vested interest in the cause of action to his attorneys of forty per cent., based on the consideration that they would conduct his cause for him. This constituted an equitable assignment of the claim *pro tanto*. It is the intention of the parties that is to control. The test is as to whether or not he made an equitable assignment. Was Harris ever personally responsible to his attorneys for a single cent? The answer is bound to be in the negative. Harris was insolvent and

the fact was known to his attorneys. They relied upon this assignment, and not Harris, for their compensation. There is also a distinction between the case at bar and the cases that hold that there is no equitable assignment where the agreement is that the attorney " shall have a reasonable amount for his services," for the very obvious reason that such a contract is uncertain, and, therefore, void. What is a " reasonable amount " is always a question of proof. Harris has done all that he could do to make an equitable assignment to his attorneys except say to them, " Here is an equitable assignment." All the facts and the circumstances go to show that he intended it as such, and that after his contract with his attorneys he had no interest in or control over the amount of their interest in the cause of action, and if it was Harris himself in the court, attempting to deny that he had made an equitable assignment to his attorneys in the face of this record, he would not be heard to deny it for a moment, and if it is an equitable assignment as to him, it must be an equitable assignment as to all parties who represent him, and they cannot avail themselves of any irregularities that Harris himself could not take advantage of. A leading case on this subject is to be found in 34 Penn., 299, and at the close of the opinion to be found in 27 Am. Dec., 301. 27 Am. Dec., 301; 34 Penn., 299; Bispham's Eq., sec. 167; 3 Pom., 1271; 3 Pom., 1282.

5. In the argument of this case in the court below, the attorneys on the opposite side seemed to take hold of the idea that we were attempting to assert an attorney's lien on this judgment for our services as attorneys. Such is not the case. We are attempting to assert no lien growing out of our relation with Harris as attorneys. We are standing on our contract rights, entered into at the time Harris employed us. The consideration for this contract happens to be for services as attorneys, but we predicate no claim by virtue of our employment as such. The leading authorities on this subject is to be found in 34 Penn., 299, and in 89 New York, 518, and in 1 Am. &

Eng. Enc. L. (1st ed.), 973, note; 55 New York, 120; 16 Hun, New York, 353; 10 Hun, New York, 232; 1 Hun, New York, .532; 34 Penn., 299.

6. The court below decided this case on the ground that the agreement between Harris and his attorneys did not constitute an equitable assignment. In the face of the facts agreed to, where Harris himself says that he "agreed to give his attorneys forty per cent. of the amount that they should recover," and on the faith of this agreement the attorneys rendered a meritorious consideration for the assignment. It is our view that the question of whether or not what he did do constituted an equitable assignment, as between Harris and his attorneys, is not left in doubt, and if it was an equitable assignment as between them it must be an equitable assignment as to all other persons who merely stand in the place of Harris. Equity never stops at forms of expression, but considers the real intention of the parties. The cases particularly referred to in this connection are 34 Penn. State, 299; 28 N. Y. Rep., 365; 18 N. Y. Rep., 368; 40 Am. Rep., 388. Also, 1 Am. & Eng. Enc. L. (1st ed.), 835; 1 Am. & Eng. Enc. L. (1st ed.), 973, notes; 19 Blatchford's Rep., 290; 89 N. Y. Rep., 518.

7. But we do not believe that the question of whether or not there was or was not, an equitable assignment can ever be the determining point in this case, in the light of the facts agreed to. We say this for the reason that it is manifest that some kind of an assignment was made to the attorneys, which would effectively prevent Harris from ever successfully claiming that he did not make an equitable assignment to his attorneys of the interest claimed, and if this be true, none of the successors as volunteers to Harris' right can do more than he himself could do.

8. Having as we believe, satisfactorily shown to the court that an equitable assignment can be made, and that we are justified in saying that such an assignment was in point of fact made to the attorneys before the entry of either of the judgments, the next question for us to consider is, granting that the

equitable assignment was made of the cause of action at the time that it is claimed that it was, how does it affect the rights of the parties before the court, with reference to their respec-. tive claims? Does the right of set-off exist as claimed, and, if so, how does it come about? If the right of set-off exists in the oil mill as claimed, it must come about in either one of two ways, viz.:

(*A*) It must grow up out of the bare fact that the parties have mutual judgments against each other, and the court, in the exercise of that power which it has over suitors in the court, will permit one judgment to be set off against the other; or,

(*B*) It must grow out of the fact, that the cause of action in each case is so intimately connected, that the right to set-off one judgment against the other is a right that is inherent in the cause of action, and cannot be defeated by any act of the other party by assignment of the cause of action. I shall argue the different propositions in the order in which I have announced them above. I will undertake to show that the right of set-off in the case at bar is a right that is derived entirely from the fact that each party has a judgment against the other, and that this right did not attach until the entry of each judgment, and that, therefore, when the right to do so was complete it could only be done subordinate to prior equities that had attached to the judgment against which the set-off is desired; and, second, that in the case at bar the right of set-off did not exist as against the original causes of action, but that as it was a suit for unliquidated damages, such a right could not have existed until the entry of each judgment, and that there can be no such thing as an inherent right of set-off growing out of this cause of action.

9. *Subdivision "A."*—(*A*) 1. I will begin with the statement that the right that one party has to set off a judgment that he may hold as against his judgment creditor, in the absence of special equities in either party, is the same kind of a right that any creditor gets against his judgment debtor to

have his judgment satisfied out of the property that his judgment debtor owns—that is to say, that the judgment creditor only gets the right to a satisfaction of his judgment out of the property that his judgment debtor actually owns, and his judgment lien only extends to the actual interest of the judgment debtor in any property on which he attempts to have his judgment satisfied, and, if his judgment debtor is the apparent owner of any property, and an execution is levied by the judgment creditor on that property, and it is impressed with an equitable ownership in some third party, the equitable owner of the title is obliged to prevail as against the execution of the judgment creditor without notice, for the reason that he can only succeed to such interest as the judgment debtor had in the property, and, being a volunteer, so to say, he cannot complain that he has not notice of equitable ownership.    48 Miss., 536; 58 Miss., 846.

(A) 2. We take the position that the only right of set-off that the oil mill can have must be founded in the first proposition—that is to say, on the fact alone that there are mutual judgments against each other, and that they can have no special equities inherent in the cause of action so as to give them any better right than any other judgment creditor might have where there were mutual judgments—and this being the case, the court is bound to observe and protect all equities in the judgment held by the third parties before the set-off will be allowed, and it will be our effort to demonstrate this upon authorities.    The leading cases cited upon this point are 2 Edwards' Chancery Prac., 73; 60 Am. Rep., 316, and 119 Mass., 399, also citing Waterman on Set-off, 376; 14 Johns. Rep., 63; 12 Mass., 195; 19 Abbott's Practice, 267.

(A) 3. In setting off one judgment against another, the real and not the nominal parties are looked to, and if the judgment has been in good faith, and for a valuable consideration assigned, the court will protect all the equities.    The leading cases on this subject are to be found in 60 Am. Rep., 316, and

119 Mass., 397, also citing 55 N. Y. Rep., 120; 28 N. Y. Rep., 365; 2 Freeman on Judgments, 427.

(*A*) 4. It is a mistaken impression that the right to set off one judgment against another is a statutory right.    Such is not the case.    It is a common law right, and is exercised in obedience to all the equitable principles applicable to same.    The leading authority on this subject is to be found in 70 Miss., 590, and 68 Minn., 328, also citing 159 N. Y., 444; 44 Am. Rep., 280; 112 N. Y., 655; 17 Am. St. Rep., 36.

(*A*) 5. We do not contend that the assignee of a chose in action, whether he be a legal or an equitable assignee, can take same freed from any existing rights of set-off that the party against whom it is assigned held against it before notice of the assignment, but we argue that this was a suit for unliquidated damages, and that at the date of the assignment to us the parties did not and could not have had any right of set-off.    The leading case upon this subject is to be found in 2 Edw. Chan., 73, and in 57 Miss., 93, and we also cite 8 Smed. & M., 349; 1 How. (Miss.), 584; 22 Am. & Eng. Enc. L. (1st ed.), 239.

(*A*) 6. As this was a suit for unliquidated damages, and as we have shown by the authorities cited above, that the right of set-off did not exist at the time the suit was brought, we now cite the following authorities to show that if the right of set-off existed at any time, it was not until after the entry of each judgment, and at that time, while Harris was the nominal plaintiff in the judgment, a forty per cent. equitable interest was absolutely owned by his attorneys, and the oil mill could only rid themselves of it by payment.    8 How. Prac., 320; 4 How. Prac., 320; *Mackey* v. *Mackey*, 43 Barb., 60; *Spencer* v. *Barber*, 5 Hill, 569; *Peckam* v. *Barcalow*, Hill & Denio, 113.

(*A*) 7. We have shown that this right of set-off did not exist until after the entry of each of the judgments, therefore it logically follows that if the right of set-off did not exist until that time, the right to do this is subordinate to all the equities that have grown up in third parties in the judgment against which

the set-off is desired, for the reason that the right to set off is only co-equal with the right that a judgment debtor has in the judgment against which the set-off is sought; and this being the case, if the judgment debtor has parted either with the legal or the equitable interest in the judgment, before the right of set-off accrues in the other party, the judgments cannot be used as set-offs to the prejudice of the equities in third parties. A leading case on this subject is *Swift* v. *Prouty*, 64 N. Y., 546. We also cite *Perry* v. *Chester*, 53 N. Y., 243; *Nash* v. *Hamilton*, 3 Ab. Prac., 37; *Roberts* v. *Carter*, 17 How. Prac., 347.

(*A*) 8. As the oil mill did not have the right of set-off as against the original cause of action, a notice to them of the assignment of the cause of action was not necessary, in order to make a valid, legal or equitable transfer of the cause of action, as they were not and could not be prejudiced thereby. The leading case upon this subject will be found in 2 Edwards' Chancery, 73. As the oil mill did not have the right of set-off at the time that the chose in action was assigned, the assignees thereof took the claim freed from any rights that the oil mill subsequently acquired, even though the assignees may have had notice that the oil mill was claiming as against Harris, which could not be used as a set-off as against the cause of action of which they were the assignees, if they were assignees for value and in good faith. 2 Edwards' Chy., 73; 40 Am. Dec., 296; 5 Mason's Rep., 202; 70 Miss., 590.

(*A*) 9. The right to set off the judgments not maturing until the judgments of both parties had been entered, we having shown above that this right could not have existed until then, and the cause of action, or a part thereof, having been assigned to the attorneys before the entry of the judgment of either party, the oil mill could not use its judgment as a set-off against the judgment recovered by Harris against them, except as against the interest of Harris in the judgment, even though Harris was the nominal plaintiff in the judgment. 2 Edwards'

Chy., 73; 34 Penn., 299; 28 N. Y. Rep., 365; 18 N. Y. Rep., 368; 4 Hill, N. Y., 559; 10 Paige, 369; Waterman, Set-Off, 391; 40 Am. Rep., 388.

(*A*) 10. The assignment of this cause of action to the attorneys is effectual to prevent a set-off of the judgment previously recovered by the oil mill against Harris.    17 Conn., 110; 89 N. Y., 518; 55 N. Y., 120; 40 Am. Dec., 296; 2 Edwards' Chy., 73; 5 Mason's Rep., 202; 1 Am. & Eng. Enc. L. (1st ed.), 973, note. .

(*A*) 11. There are three places in the code in which this right of set-off is mentioned, and only three.    The three places are to be found in §§ 660, 687 and in 3503.    Though each section is dealing with the right of set-off, they each are applicable to a different condition of things—that is to say, § 660, after making choses in action assignable in writing where the party desires to sue in his own name, saves to the party against whom the chose in action is assigned his rights of set-off had before notice of the assignment; § 687 has application to the case in which a party holds a claim against the party plaintiff against him, and provides that he may use his claim as a set-off when the suit is instituted against him; § 3503 has relation to a set-off had or possessed against the same.    We claim in this case that the oil mill could not have had a set-off against the "same," as it was a suit for unliquidated damages, and that, for that reason, they cannot set up any special claim of any equity by reason of the fact that we took the assignment with the notice that they held an open account against Harris, as it was not a set off "against the same" in contemplation of the statute with reference to set-offs.    As we have seen that this right to set off one judgment against another is a common law right and not a statutory right, and that it rests in the sound discretion of the court to allow or disallow the right as the judgment of the court may suggest when confronted with all the equities of the parties, it follows that the set-off will be allowed under such circumstances as will "prevent" and not

" do injustice," and that the set-off will not be allowed under circumstances that are repugnant to equity. It follows that the oil mill having come into court and denied the very existence of the contract under which Harris sues, and thereby compelling him to employ attorneys to sue in order that his rights might be ascertained, they will not now be heard to assert that they have a claim to superior equities growing out of the very contract that they have solemnly come into court and denied. To allow them to do so would be inequitable, would be to allow them to take advantage of their own wrong, and would be to " do injustice," and not " prevent " injustice. As this is an equitable right that the oil mill is claiming, equitable principles will prevail. A leading case on this subject is to be found in 44 Am. Rep., 280, and 17 Am. St. Rep., 36. We also cite 28 N. Y., 365.

(*A*) 12. " Who seeks equity must do equity " is a maxim of the law that has been so strongly applied in this state that the courts have declared that even where the statute makes absolutely void a contract where a party has failed to pay his full privilege license, still where a party seeks to avoid a contract on this ground, and is the actor before the court for this purpose, the court will decline to avoid the contract until the party has done equity to the extent of paying all that may be due under the contract to the party against whom he seeks to cancel the contract. The oil mill had full notice of the claims of the attorneys before they filed the bill praying for an injunction. They knew that the attorneys' claim was based upon a good and valid consideration, and by their own wrong to Harris they had made the employment of attorneys necessary, and they had been given a credit of all the interest that Harris claimed in the judgment, and it is equitable and just that they should recognize and pay off the claims of the attorneys. The considerations that are discussed in the case of *Puett* v. *Beard*, in 44 Am. Rep., 280, make it imperative that in this class of cases the attorney must be paid. 44 Am. Rep., 280; 64 Miss..

195; 68 Miss., 99; 1 Pom., sec. 386; 68 Minn., 328; 70 Miss., 263.

. (*A*) 13. Whether there was or was not an equitable assignment, it is positively certain that it was so intended by the parties, and applying the maxim that "equity considers that as done which ought to be done," the court will execute and perfect the assignment, as between the parties themselves and all others who claim as volunteers, the right in which the oil mill must claim, if at all. This assignment was made to us before either judgment was obtained or the suits instituted. When the judgments were entered our right was definitely ascertained, and at the same time the right of the oil mill to have their judgment set off against the judgment against Harris became complete, subject to intervening equities, and as the assignment was made to us before the right accrued to the oil mill, our rights relate back to the date of the assignment, and the oil mill is shut out. Being prior in point of time, we are prior in right.

*Subdivision* "*B.*"—I will now take up and discuss the second proposition "*B.*" That is to say, was there anything connected with the causes of action in each case which would give the oil mill any inherent right of set-off as against the judgment of Harris, that would exclude an assignment that Harris had made of his cause of action before the rendition of judgment?

(*B*) 1. I have clearly shown by authorities that the oil mill did not and could not have held a set-off against the claim for damages sued on by Harris. I call the court's attention to the statutes in relation to this subject, and it will be seen that the statutes treating of this subject always use the word "set-off." In section 660, in speaking of the assignment of choses in action, the statute says that they may be assigned in writing, etc., and then says, "A set-off or other defense existing at the time shall not be prejudiced thereby." This shows that the oil mill, if it had any rights in the cause of action, it was the

right of recoupment, and in order to make that available, it was necessary for them to have used that defense on the trial of the issue. The oil mill appeared to the suit, pleaded to same, and were represented, and it is a conclusive presumption that they made all the defenses that they had to the cause of action at the time of the trial. This right to recoup is merely defensive, and may be availed of or left alone as the defendant may see fit. It is purely a personal right and goes not in denial of the cause of action of plaintiff, but by way of mitigation of damages. The leading case on this subject, and the clearest exposition of the law that I have been able to find, is to be found in 2 Edw. Chan., 73, where the court says that this right to recoup is not given by the law, and that a court of equity will not extend the principle any further than the law. 2 Edw. Chan., 73; 5 Mason's Rep., 202.

*Robert N. Miller*, for appellee.*

The facts of the case are few and easily abstracted. The appellant, Harris, was a feeder of cattle. The oil mill sold him cottonseed hulls and meal on which to feed them to an amount in value of $436.13, for which Harris refused to pay, and the oil mill sued him on the open account. A few days after this suit was brought, and in order to "get even," Harris, through his attorneys, Mayes and Williams, brought suit against the oil mill for $5,000 for breach of a contract claimed by him to exist with the oil mill to furnish him these feed stuffs on credit, etc., and claiming damages by breach of the contract. The oil mill got judgment by default in the circuit court on its suit, and afterwards the suit of Harris was tried, and he recovered a judgment against it for $200, this judgment of Harris against the oil mill being rendered after the judgment of the oil mill against Harris had been obtained and entered. The oil mill thereupon filed the bill and amended bill shown by the record against Harris, setting up the foregoing facts—that it

---

*The brief is reported in full by order of the court.

had a judgment against him and he one against it, growing out of the same transaction, and asking that his judgment be canceled and set off against the same amount of our judgment against him, and that we have execution for the balance. In his answer to our amended bill, Harris admits all the allega- tions of the bill or amended bill, and denies the right of set-off by reason of the fact that he "had agreed" to give his attor- neys forty per cent. of the amount they should recover in his suit, and that this agreement gave said attorneys an equitable interest in the judgment of Harris against the oil mill superior to our rights and we could not set off as to this forty per cent. of his judgment.

The case was tried on an agreed state of facts before the chancellor, which appears in the record. The agreed facts show that when the oil mill filed its bill it had no notice what- ever that any claim existed by the attorneys to the judgment. Before the chancellor it was contended that the attorneys had a lien superior to our right of set-off, or, if mistaken in that, that they had an equitable assignment of forty per centum of the judgment superior to our right of set-off. In this court the contention of a lien is abandoned—admittedly so in the brief of counsel. It is, however, contended that the agreement they had with Harris was an equitable assignment of forty per centum of the judgment. It is only necessary, therefore, to discuss the single question of whether, on the agreed facts, they had such equitable assignment of forty per centum of the judg- ment of Harris against the oil mill, and, if so, was their equity superior to our right of set-off. No one questions the right to set off Harris' judgment by our own judgment against him.

First, then, did the attorneys of Harris have an equitable assignment of forty per centum of the judgment? It is agreed that Harris " contracted with his attorneys verbally to conduct the suit for him, agreeing to give them forty per centum of the amount they should recover in the suit against the oil mill,"

etc. This is the only suspicion of proof of a contract which it is contended amounts to an equitable assignment.

In section 1280, 3 Pom. Eq. Jur., he says, speaking of equitable assignment, that "in order that the doctrine may apply and that there may be an equitable assignment creating an equitable property, there must be a specific fund, sum of money or debt actually existing or to become so in future, upon which the assignment may operate, and the agreement, direction for payment, or order, must be, in effect, an assignment of that fund or of some definite portion of it."

In section 1282 the same author, in discussing what shall amount to an equitable assignment, says it is a question of intention, "to be gathered from all the language, construed in the light of surrounding circumstances." And that, in the absence of a direct appropriation, the inference or presumption is that it is not an assignment, but a mere executory contract to assign. It is perfectly well settled that a mere promise to give you a part of a fund in being or to exist in future is an executory agreement and not an assignment."

In note 2 to section 1282 Pomeroy discusses this question at length, and reaches the conclusion that whatever be the rule in England, "the American courts do not accept this doctrine— that is, that a mere promise to give one part of a fund is an equitable assignment. They require a present appropriation, by order or otherwise, of a fund, whether existing or future. A mere promise or executory agreement to apply or to appropriate a fund does not, according to the American rule, amount to an equitable assignment." He clearly draws the distinction between a mere executory agreement, held by the English courts to amount to an equitable assignment, and a present executed assignment, which is required by the American courts, to vest the assignee with an equitable assignment and property in the fund, and cites in support of this American doctrine the following: *Christmas* v. *Russell*, 14 Wall., 69 (U. S.); *Trist* v. *Child*, 21 Wall. (U. S.) 441; *Ex parte Tremont Nail Co.*, 16

Bank Reg., 448; *Christmas, administrator*, v. *Griswold*, 8 Ohio St., 558; *Rogers* v. *Hosack*, 18 Wend., 319.

In the case cited in 21 Wall., above, the agreement was just like this case, to pay the attorneys twenty-five per centum of the amount that should be recovered, and the supreme court of the United States held it did not create an equitable lien or assignment. Justice Swayne there cites as authority *Wright* v. *Ellison*, 1 Wall., 16; *Hoyt* v. *Story*, 3 Barbour Sup. Ct., 264; *Malcomb* v. *Scott*, 3 Hare, 39, and *Rogers* v. *Hosack*, 18 Wend., 319.

In 1 Am. & Eng. Enc. L. (1st ed.), 837, 838, we have the rule stated as follows: "A mere promise or agreement to pay out of a particular fund," etc., does not amount to an assignment, and, on page 838, "An order, to operate as a valid assignment, must purport to pass a present interest in the chose to the alleged transferee." In the notes, which are full, the rule of the English and American courts is considered, and the conclusion reached, in harmony with Pomeroy's statement of it, that, in American courts a mere promise or agreement to give part or whole of a fund is an executory contract merely, and creates no assignment, legal or equitable, citing, in addition to cases *supra*, *Ford* v. *Garner*, 15 Ind., 298; *Pearce* v. *Roberts*, 27 Mo., 179.

In the light of these authorities, it is submitted with confidence that the appellant's case fails at the source. He had, or his attorneys had, nothing but "an agreement to give them forty per centum of the amount they should recover." This does not amount to an equitable assignment, on which is grounded the whole case.

It is useless to cite authority to show that attorneys are not on higher grounds than other persons, and have no such thing as equitable liens in this state. It is the safe rule, the rule of the American courts, to permit them no special liens. 1 Am. & Eng. Enc. L. (1st ed.), 972, and notes. The safe rule, I re-

peat, is to let these "guileless innocents" look out for themselves, as other people are required to do.

Again, if it be conceded that the agreement gave the attorneys an equitable assignment of a fund to exist in future, this assignment could not have been complete or consummated until the fund existed, which was when the judgment was entered. Now, when Harris' judgment was entered our judgment against him already existed, ours being entered first, and our right of set-off was complete. In other words, at the moment the attorneys of Harris got a completely executed assignment, our right of set-off was complete and existed. So, by § 660, code 1892, they took their assignment subject to our right of set-off.

It would be monstrous, and, indeed, the law would be out of joint, if we would not only have to lose all the account due us by Harris, by reason of his insolvency, and have to pay all costs, and, in addition, be compelled to pay his attorneys' fees for litigating with us. No such result is possible.

They had no assignment, but simply an executory promise, and, if they got an assignment, it only became executed after our right of set-off was in existence.

WHITFIELD, C. J., delivered the opinion of the court.

In the light of the agreed facts in this case we think there was an equitable assignment, *in presenti*, of forty per centum of the amount of the judgment to be obtained. Harris was insolvent, and his attorneys knew this, and did not look to him at all, but solely to this forty per centum thus assigned. The appellee could only ask to have Harris' interest in the judgment set off, not the forty per centum assigned. Counsel for appellee look too narrowly to parts of the contract, "agreed to give," etc. The whole contract and its environment must be looked to if we would ascertain the real intention as to assignment. So, looking at the whole case, we are unable to concur with the learned chancellor below.

The principles of law applicable, and the authorities in which

they may be found, on both sides are so admirably set forth by the respective counsel for appellant and appellee that we direct their briefs to be published in full as models of excellence as supreme court briefs.

*Decree reversed and cause remanded to be proceeded with in accordance with this opinion.*